UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

---

| | |
|---|---|
| METCALFE & SONS INVESTMENTS, INC. d/b/a GENERATOR SUPERCENTER | CIVIL ACTION NO. 09-941 |
| VERSUS | JUDGE TRIMBLE |
| MULTIQUIP, INC. | MAGISTRATE JUDGE KIRK |

---

## MEMORANDUM RULING

Before the court is a motion to dismiss or, alternatively, to stay the above captioned suit by plaintiff. For the reasons expressed below, the court finds that defendant's motion should be **DENIED** in both respects.

## I. BACKGROUND

This suit arises out of the State of Louisiana's disaster recovery response following Hurricane Gustav in early September of 2008. Plaintiff herein is Metcalfe & Sons Investments, Inc., d/b/a Generator Supercenter ("Metcalfe"), a Texas corporation with its principal place of business in Texas, but licensed and doing business in Louisiana.[1] Plaintiff's suit names Multiquip, Inc. ("Multiquip"), a California corporation with its principal place of business in California.[2]

Plaintiff alleges that, on September 5, 2008, the Louisiana Department of Natural Resources ("LDNR") issued a purchase order to purchase 68 generators for the price of $3,182,240 as part of

---

[1] R. 1.

[2] Id.

1

the state's "Essential Services Generator Initiative."[3] The purchase order issued by LDNR specifies that delivery of the generators must be made within two (2) days.[4]

In order to fulfill the purchase order issued by the state, plaintiff alleges that it contacted Multiquip, a supplier of generators, to purchase the necessary generators.[5] Plaintiff alleges that Multiquip asked it to submit a purchase order for the generators and a copy of the state's purchase order so that Multiquip could begin the process of credit approval. Plaintiff complied and issued a purchase order in favor of Multiquip for purchase of 68 generators for $2,562,086.[6] Plaintiff alleges that Multiquip warned that it would be difficult to complete the credit approval process over the weekend.[7] In order to get around this obstacle, Multiquip suggested that Metcalfe ask the LDNR to reissue the purchase order in Multiquip's favor directly and that Multiquip would pay Metcalfe an unspecified amount for its involvement in this sale.[8] Plaintiff declined this offer, electing to retain its status as seller under the state's purchase order.[9]

Plaintiff alleges that Multiquip initiated direct contact with LDNR after it refused Multiquip's offer to supply the generators directly to the state.[10] Plaintiff further alleges that Multiquip informed

---

[3] Plaintiff's state court petition at ¶ 7 (located at R. 1-1, p. 4). A copy of the purchase order referenced in plaintiff's petition is located at pp. 4-5 of R. 1-2.

[4] R. 1-2 at p. 5.

[5] R. Petition at ¶ 14 [R. 1-1 at p. 5].

[6] Id. at ¶¶ 15-17.

[7] Id. at ¶ 18.

[8] Id. at ¶¶ 19-20.

[9] Id. at ¶ 21.

[10] Id. at ¶ 22.

LDNR that Metcalfe would not be able to fulfill the order because of the credit application process.[11] After learning of Multiquip's alleged communications with LDNR, Metcalfe began negotiating to get generators from another supplier, Doosan Infracore, Inc ("Doosan").[12] The Doosan generators were of a different capacity than those specified in the LDNR purchase order, so Metcalfe contacted LDNR and asked them to issue a change order so that the Doosan generators could be used to fill the order.[13] Metcalfe asserts that LDNR issued such change order on September 6, 2008 at 10:37 p.m., calling for the delivery of twenty-three (23) 50 kW capacity generators within two (2) days of receipt of the change order.[14]

Metcalfe contends that it sought and obtained the financing necessary to purchase the remainder of the generators ordered by LDNR from Multiquip and that Multiquip confirmed receipt of the funds transfer.[15] Metcalfe claims that its trucks picked up the generators from the Multiquip distribution center in Kentucky.[16]

Metcalfe alleges that it spoke to Gwen Thomas of LDNR who assured Metcalfe that LDNR would not refuse delivery of the generators, even though there was an outside chance that delivery of the generators might occur after midnight because of the distance between the suppliers and the

---

[11] Id. at ¶ 24.

[12] R. 18-1 at 25.

[13] Id. at ¶ 26.

[14] Id. at ¶¶ 29-30.

[15] Id. at ¶¶ 31-32.

[16] Id. at ¶ 32.

delivery location.[17] Within the hour after Metcalfe's conversation with Thomas, Louis Buatt of LDNR advised Metcalfe not to ship the generators specified in the change order and that any delivery of these generators would be refused.[18]

Metcalfe went forward with its planned delivery of the generators under the change order. Metcalfe alleges that its delivery trucks reached the National Guard base at Carville, Louisiana, which was the delivery location specified in the change order, on September 8, 2008 at approximately 10:30 p.m.[19] Metcalfe claims that it was given several differing excuses by LDNR for its refusal of delivery, including that LDNR had cancelled the contract with Metcalfe, that the generators contained in the shipment did not conform to the original purchase order, that Carville National Guard Base did not have the capacity to unload a box trailer, and that these generators were no longer needed.[20]

Metcalfe pursued administrative remedy of its claim under the Louisiana Procurement Code for losses resulting from LDNR's refusal of the generator shipment.[21] As pointed out by defendant, the Commissioner of Administration issued an opinion stating that LDNR did not breach its contract with Metcalfe.[22] Metcalfe appealed the Commissioner's ruling and subsequently filed for judicial

---

[17]Id. at ¶¶ 33-34.

[18]Id. at ¶ 38.

[19]Id. at ¶ 41.

[20]Id. at ¶¶ 43-52.

[21]R. 18 at p. 8; R. 18-1 at p. 1.

[22]R. 16-1 at p. 6; R. 16-7 at pp. 3-6.

review.[23] That suit is currently pending in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[24]

On or about September 10, 2009, Metcalfe filed suit against Multiquip in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana asserting claims for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law and intentional interference with a business relationship.[25]  Defendant Multiquip timely removed the suit to this court in December 2009, asserting that complete diversity exists as among the parties and that the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 and, accordingly, that this suit falls within the court's original jurisdiction pursuant to 28 U.S.C. § 1332.[26]

Multiquip filed the instant motion in June of 2010, seeking dismissal of plaintiff's claims under Fed. R. Civ. P. 12(b)(6) or, alternatively, a stay of these proceedings.  The motion has been fully briefed by the parties and is now properly before the court for decision at this time.  We address the law and argument advanced by the parties below.

## II.  APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  In considering a Rule 12(b)(6) motion, the Court must accept the factual allegations of the complaint as true and resolve any ambiguities or doubts

---

[23]R. 16-7 at pp. 3-10; R. 16-2 at pp. 1-15.

[24]R. 16-1 at p. 6; R. 18 at p. 8.

[25]R. 1-1 at ¶¶ 33-43.

[26]R. 1.

5

regarding the sufficiency of the claim in plaintiff's favor.[27] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[28] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[29] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[30]

### III.   ANALYSIS

    A.   <u>Plaintiff's claim for intentional interference with a business relationship</u>

Multiquip asserts that Metcalfe has failed to demonstrate a cause of action for tortious interference with contract under Louisiana law. Multiquip cites a multitude of cases, including <u>9 to 5 Fashions, Inc. v. Spurney</u>,[31] as authority for the elements of a tortious interference claim under Louisiana law. Multiquip points out that tortious interference with contract is a cause of action that lies as against a corporate officer for actions which cause his corporation to breach its contract and arises out of the fiduciary duty owed by the officer to that corporation.[32] Further pointing out that

---

[27] <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996); <u>Fernandez-Montes v. Allied Pilots Ass'n.</u>, 987 F.2d 278, 284 (5th Cir. 1993); <u>Brumberger v. Sallie Mae Servicing Corp.</u>, 2003 WL 1733548, *1 (E.D. La. March 28, 2003).

[28] <u>Guidry v. Bank of LaPlace</u>, 954 F.2d 278, 281 (5th Cir. 1992).

[29] <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 931 (5th Cir. 1995).

[30] <u>Campbell v. City of San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995).

[31] 538 So.2d 228, 234 (La. 1989); R. 16-1 at pp. 3-4.

[32] R. 16-1 at pp. 3-4.

...
...

it is a corporation and not a corporate officer, Multiquip asserts that plaintiff Metcalfe is unable to demonstrate the required elements to maintain an action for tortious interference against it.[33]

In response, Metcalfe denies that it intends to state a claim for tortious interference with contract.[34] Instead, Metcalfe argues that, as expressly stated in its complaint, its claim is for tortious interference with a business relationship, which it claims is a separate and distinct claim from tortious interference with contract.[35]

Louisiana courts recognize a cause of action for tortious interference with business relationship, grounded in Louisiana's general tort law under La. Civ. C. Art. 2315. As explained by these courts, Metcalfe must allege that defendant Multiquip, acting with malice, "improperly influenced others not to deal with plaintiff."[36] This cause of action pinpoints actions undertaken purely to harm the business of another and not to protect some legitimate interest of the actor.[37] As argued by plaintiff, entitlement to this cause of action is not limited to officers of corporations.[38]

Our examination of plaintiff's complaint reveals that plaintiff has, in fact, stated a claim for tortious interference with business relationship, both in title and in the facts alleged.[39] Specifically, Metcalfe alleges that Multiquip intentionally misled LDNR about Metcalfe's ability to obtain credit

---

[33] Id. at p. 4.

[34] R. 18 at pp. 3-7.

[35] Id.

[36] Junior Money Bags, Ltd. v. Segal, 970 F.2d 1,10 (5th Cir. 1992) (internal citations omitted); Ustica Enterprises, Inc. v. Costello, 434 So.2d 137 (La. App. 5th Cir. 1983).

[37] Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594 (5th Cir. 1981).

[38] McCoin v. McGehee, 498 So.2d 272 (La. App. 1 Cir. 1986).

[39] R. 1-1 at ¶¶ 39-43.

...
...

sufficient to fulfill LDNR's purchase order and did so maliciously and not in furtherance of any legitimate business interest of its own.[40] Multiquip's arguments concerning tortious interference with contract are inapplicable and, as pointed out by Metcalfe, fail to address Metcalfe's actual allegations. Accordingly, the court finds that Multiquip's motion to dismiss for failure to state a claim should be denied as to Metcalfe's tortious interference claim.

B.   Collateral attack

Defendant Multiquip asserts that Metcalfe's claims against it under tort law and the Louisiana Unfair Trade Practices Act ("LUTPA")[41] should also be dismissed because they constitute an impermissible collateral attack on the finding of the Commissioner of Administration that LDNR did not breach its contract with Metcalfe.[42] Metcalfe denies defendant's allegation of collateral attack and argues that adjudication of its claims against Multiquip in this case may occur independently of the ongoing Louisiana district court proceedings.[43] The court agrees.

Collateral attack is a litigation device which seeks to invalidate a prior administrative or court ruling by institution of another claim or suit in a different agency or court. A suit may be deemed an impermissible collateral attack, even when brought as against a third party not previously named in an administrative proceeding, when the relief sought would require an attack on a prior

---

[40]Id.

[41]La. R.S. 51:1401, et seq.

[42]R. 16-1 at pp. 5-6.

[43]R. 18 at pp. 7-9.

administrative ruling.[44]

The crux of the argument offered by Multiquip in favor its motion is that the Commissioner's finding that LDNR did not breach its contract with Metcalfe, should it be affirmed by the Louisiana district court, is determinative of plaintiff's claims against it in this federal suit. As already discussed herein, Metcalfe's claim for tortious interference with business relationship does not require a breach of contract showing. Rather, such a claim centers on the behavior of the defendant and requires a showing of malice.

Multiquip also alleges that the damages sought in each suit are identical, as they stem from the same transaction. Metcalfe refutes this allegation, pointing out that the scope of damages available to it, should it prevail against LDNR in state court, are statutorily limited to "actual expenses reasonably incurred in the performance of the contract."[45] By contrast, Metcalfe claims, attorney fees and costs are available to a successful plaintiff under LUTPA. Metcalfe acknowledges that certain damages may be awarded by the state court, should it prevail there and, for that reason, Multiquip would likely be entitled to a credit in such amount as may be appropriate in this court.[46] Plaintiff is correct that such damages would be, in the event of a judgment in its favor, available in association with its LUTPA claims.[47]

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff's ability to demonstrate consequential, indirect or special damages is beyond the scope of our consideration.

---

[44]Doe v. ABC Corp., 951 SO.2d 452 (La. App. 4 Cir. 2007).

[45]R. 22-1 at p. 2, citing La. R.S. 39:1678.1(B).

[46]Id.

[47]La. R.S. 51:1405(A).

9

Thus, we agree with plaintiff that questions concerning proofs of damages should be preserved for another day.

While defendant Multiquip does not expressly attack plaintiff's LUTPA claim, we find that the instant motion should be denied as to that claim, as well as to plaintiff's tort claim, as discussed above. Plaintiff's complaint alleges "substantially injurious" conduct by Multiquip, including deception and misrepresentation under La. R.S. 51:1405(A), constituting unfair trade practices under same.[48] Multiquip has not demonstrated that proof of plaintiff's LUTPA claim would require this court to invalidate the finding of the Commissioner or to otherwise interfere in the ongoing judicial review of that finding by the Louisiana district court.

C. <u>Stay of these proceedings pending outcome of the ongoing state suit</u>

Considering our findings above, we do not find that a stay of the above captioned suit pending resolution of plaintiff's state court judicial review proceedings is necessary. If the Louisiana district court were to affirm the finding of the Commissioner that LDNR did not breach its contract with Metcalfe, we find that plaintiff might still possibly demonstrate the necessary elements of his claims in this case. Moreover, if the Louisiana district court overturns the findings of the Commissioner in favor of Metcalfe, such finding would have no effect on this court's consideration of claims in this case because the claims advanced in this case pertain only to the alleged actions by Multiquip and do not reach any subsequent actions by LDNR.

Accordingly, Multiquip's motion for stay of these proceedings will be denied.

---

[48] R. 1-1 at p. 8.

IV.     CONCLUSION

Having considered the law and argument advanced by the parties on the issues presented, the court finds that plaintiff has stated a cognizable claim for tortious interference with business relationship under Louisiana law. We also find that plaintiff's claims in this suit do not constitute a collateral attack on the finding, now under judicial review, of the Louisiana Commissioner of Administration. We further find that adjudication of plaintiff's claims in the instant suit need not be stayed pending the aforementioned Louisiana state court action, as the claims advanced in each case, while based on the same transaction, allege wrongdoing by two different parties and contemplate liabilities which are not interdependent.

For the reasons expressed above, the court concludes that the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be **DENIED** and, similarly, the alternative motion to stay should be **DENIED**.

The court will issue an order in conformity with these findings.

Alexandria, Louisiana
September _13_, 2010

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE