UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE DIVISION

| | | |
|---|---|---|
| METCALFE & SONS INVESTMENTS, INC., D/B/A GENERATOR SUPERCENTER | : | DOCKET NO. 3:09-0941 |
| VS. | : | JUDGE TRIMBLE |
| MULTIQUIP, INC. | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #59) filed by defendant, Multiquip, Inc. ("Multiquip") wherein the mover seeks to dismiss the claims of plaintiff, Metcalfe & Sons Investments, Inc. d/b/a Generator Supercenter. Multiquip maintains that Metcalfe has no evidence to establish a prima facie case and to sustain its ultimate burden of proving to a reasonable trier-of-fact, its claims of intentional interference with business relations, or its claims of unfair or deceptive trade practices under the Louisiana Unfair Trade Practices and Consumer Protection Law, Louisiana Revised Statute 51:1401, *et seq.*

## FACTUAL STATEMENT

In the immediate aftermath of Hurricane Gustav,[1] the State of Louisiana commenced an emergency program to buy 400 portable generators to speed up the state's recovery effort.[2] Metcalfe & Sons Investments, Inc., d/b/a Generator Supercenter (hereinafter referred to as "Generator

---

[1] On September 1, 2008, Hurricane Gustav made landfall near Cocodrie, Louisiana as a Category 2 storm with winds in excess of 115 mph.

[2] Petition for damages, ¶ 1., R. #1.

Supercenter") contacted Multiquip for the purchase of the generators.[3] On Friday, September 5, 2008, the Louisiana Department of Natural Resources ("LDNR") issued a purchase order to Generator Supercenter for 68 generators for the total price of $3,182,240.[4] The purchase order required that the generators be delivered within two days, or no later than Sunday at midnight.[5]

Throughout the evening of Friday, September 5, through the morning of Saturday, September 6, Multiquip sent several e-mails to Generator Supercenter requesting additional credit information.[6] One such e-mail, dated September 5, 2008 at 9:37 p.m., sent to Matt of Generator Supercenter, from John Keverline of Multiquip states the following:

> Matt,
> We are going to need some substantial credit information before our credit department will release and [sic] order of this size. What can you provide them to justify this. [sic] Please help me on this. Thanks.
> John,
> P.S. They have been under serious scrutiny after the recent lending crisis.

Another email was sent from John later that evening inquiring further as to the requested credit information. Early the following morning, John sent an e-mail requesting a list of detailed and specific credit information. The list was prefaced with, "Here is some of what our credit department needs before they can release the order."[7] There was no written credit agreement between Multiquip and Metcalfe which specifically pertains to the purchase and re-sale of generators to the LDNR.

---

[3] Id., ¶¶ 9-11.

[4] Id., ¶ 12.

[5] Id., exhibit C attached to petition for damages.

[6] Multiquip exhibit E, R. #59-7.

[7] Id.

Multiquip offered Metcalfe an "override" arrangement wherein Multiquip would directly sell the generators to LDNR and pay Metcalfe a portion of the profits.[8] Metcalfe refused the offer.[9]

An unidentified Multiquip employee contacted Louis Buatt,[10] the LDNR representative, on September 6 and informed Mr. Buatt about the credit situation with Metcalfe, and that the generators had not been released.[11]

Metcalfe initially represented to LDNR that the generators it was obligated to deliver were loaded and ready to ship, when in fact, this was untrue.[12] LDNR did not cancel Metcalfe's order.[13] Metcalfe paid for its generators by means of a wire transfer[14] on Monday, September 8.[15] LDNR refused to pay for the generators.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories

---

[8] This offer and arrangement was also made by Multiquip to Chiller Resources and was accepted by Chiller. Multiquip exhibit A, ¶¶ 8; exhibit B, ¶ 6; exhibit D, at 15; exhibit E, pp. 32-34 & exhibit 5. (Multiquip would assume their purchase orders and make a direct sale to LDNR, and then, upon payment by LDNR, pay an "override" to each company equal to the difference between their bid and Multiquip's cost. Multiquip exhibit A, ¶¶ 8; exhibit B, ¶ 6; exhibit D, at 15; exhibit E, at 32-34 & exh.5.

[9] Multiquip exhibit A, ¶¶ 8; exhibit B, ¶ 6; exhibit D, at 15; exhibit E, pp. 32-34 & exhibit 5.

[10] Assistant Secretary of Coastal Management.

[11] Multiquip exhibit C, pp. 20-26, 40-43, 49-55.

[12] Id.

[13] Id.

[14] Metcalfe obtained the funds through a private investor.

[15] Multiquip exhibit A, ¶¶ 9-10; exhibit B, ¶¶ 8-10, Exhibit D, at 43 & ex. 7.

3

and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[16] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[17] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[18] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[19] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[20] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[21] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[22] If the evidence is merely colorable, or is not significantly probative, summary judgment may be

---

[16] Fed. R.Civ. P. 56(c).

[17] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[18] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[19] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[20] Anderson, 477 U.S. at 249.

[21] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[22] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

granted."[23]

## LAW AND ANALYSIS

Metcalfe alleges that the undue delays caused by Multiquip's stalling caused it to just barely make delivery within the deadlines set in the LDNR Purchase Order.[24] Metcalfe further alleges that these "fulfillment delays, along with the disinformation from [Multiquip], ultimately led LDNR to breach its contract with Generator Supercenter.[25] Metcalfe asserts two causes of actions: (1) unfair methods of competition and unfair trade practices, and (2) intentional interference with a business relationship. Metcalfe seeks various damages for Multiquip's alleged unfair and deceptive business practices.

*Intentional interference with contractual relations*

Multiquip maintains that the evidence does not support the existence of a cause of action for intentional interference with contractual relations. Louisiana courts have recognized a cause of action for tortious interference with business.[26] "Louisiana law protects the businessman from 'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor."[27] The plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.[28]

---

[23] Anderson, 477 U.S. at 249-50.

[24] Petition for damages, ¶ 30.

[25] Id., ¶ 31.

[26] Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981) citing Graham v. St. Charles St. Railroad Co., 47 La.Ann. 1656, 18 So. 707 (1895).

[27] Doussouy, 660 F.2d at 601.

[28] Utisca Enterprises, Inc. v. Costello, 434 So.2d 137, 140 (La.App. 5th Cir. 1983).

5

Multiquip argues that the Louisiana tort does not encompass conduct which merely prevents the plaintiff from acquiring a prospective business relation, citing Junior Money Bas, Ltd. v. Segal.[29] Multiquip then asserts that the only dealing it had with LDNR consisted of a single telephone call from an unidentified Multiquip employee wherein the employee informed Mr. Buatt of the LDNR that Multiquip had yet to approve Metcalfe's credit, and the generators had not yet been acquired and/or loaded. Multiquip asserts that even though the LDNR was informed of the credit situation, and that Metcalfe had been untruthful about the generators being loaded, it still allowed Metcalfe the chance to perform its obligations under the purchase order.

Multiquip cites Marshall Investments Corp. v. R.P. Carbone, Co.,[30] which held that "[i]t is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party." Thus, Multiquip argues that its communication did not prevent the State of Louisiana from dealing with Metcalfe, nor was it the ultimate cause of LDNR's decision to reject Metcalfe's delivery as nonconforming and untimely.

Multiquip then maintains that the element of malice is absent. Malice in the context of this particular tort means ill will divorced from any notion of competition, *i.e.*, an intent to maximize profits or garner more business is not "malice."[31]

---

[29] 970 F.2d 1 (5th Cir. 1992).

[30] 2006 WL 2644959, *5 (E.D. La. Sept. 13, 2006).

[31] Lewis v. Huie-Hodge Lumber Co., 46 So. 685, 686-87 (La.1908)(mill owner that threatened to fire employees who shopped at competitor's store rather than his store was acting with justification of competition, and thus malice element was not satisfied); JCD Marketing Co. v. Bass Hotels & Resorts, Inc., 2001-1096 (La.App.4 Cir. 3/6/02), 812 So.2d 834, 841 ("Clearly, the alleged conduct JCD relies upon to support this cause of action is the very type of profit

Metcalfe remarks that shortly after the unidentified Multiquip employee made the call to LDNR and informed them of Metcalfe's credit situation, LDNR issued a purchase order directly to Multiquip for the same generators specified in the Metcalfe purchase order. Thus, Metcalfe argues that a reasonable trier of fact could conclude that Multiquip specifically intended to interfere with Metcalfe's relationship with LDNR, and that Multiquip's conduct amounted to a malicious interference of Metcalfe's business relationship with LDNR.

Metcalfe further notes that the circumstances surrounding Multiquip's processing of the credit application is further evidence of Multiquip's malicious intent to interfere with Metcalfe's relationship with LDNR. Metcalfe informs the court that it intends to argue at trial that Multiquip attempted to leverage its credit approval process to coerce Metcalfe into accepting the override agreement, and that when Metcalfe refused to accept it, multiquip's frustration led it to contact LDNR and falsely assert that Metcalfe could not fill LDNR's purchase order.

In order to prevail, Metcalfe must show that Multiquip actually prevented it from dealing with LDNR.[32] Multiquip points to Statement of Material Fact No. 9 which provides that "LDNR did not cancel Metcalfe's purchase order as a result of the telephone call with MQ, but instead gave Metcalfe the chance to complete its order."[33] Metcalfe has not disputed this fact with summary judgment evidence, but instead states that "LDNR refused to pay for the generators Metcalfe

---

maximization conduct that has been held insufficient to satisfy the malice element).

[32] See Marshall Investments Corp., supra; accord, Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 10-11 (5th Cir. 1992); McCoin v. McGehee, 498 So.2d 272, 274-275 (La.App. 1 Cir. 1986).

[33] R. #59.

7

Case 3:09-cv-00941-JTT -JDK   Document 69   09/27/11   Page 7 of 12

delivered, thereby breaching its contract with Metcalfe."[34]

Multiquip further notes that Metcalfe has failed to establish or submit evidence that Multiquip acted with malice. Louisiana courts have limited this cause of action by imposing a malice element which requires that the plaintiff show the defendant acted with actual malice.[35] Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings.[36]

The court finds that Metcalfe has failed to present summary judgment evidence to establish that Multiquip prevented it from dealing with LDNR and furthermore, Metcalfe has failed to present summary judgment evidence that Multiquip acted with malice. Because Metcalfe has failed to establish these necessary elements, the motion for summary judgment will be granted and Metcalfe's claim for tortious interference with a business relationship will be dismissed.

*Louisiana Unfair Trade Practices Act ("LUTPA")*

LUTPA was enacted to prohibit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[37] A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious. A trade practice is deceptive under LUTPA when it amounts to fraud, deceit,

---

[34] R. #363-1, ¶ 9.

[35] JCD Marketing Co., supra, 812 So.2d 834 (La.App. 4 Cir. 2002) citing Dussouy, 660 F.2d at 602.

[36] Id., citing Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference, 45 Loy.L.Rev. 395, 401 (1999).

[37] La.R.S. 51:1405.

Case 3:09-cv-00941-JTT -JDK Document 69 09/27/11 Page 8 of 12

or misrepresentation.[38] The determination of what is an unfair trade violation must be made on a case-by-case basis.[39]

The jurisprudence has held that there is no LUTPA violation when the alleged conduct is simply "the appropriate exercise of good business judgment and the proper workings of free enterprise."[40] In other words, "[b]usinesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious."[41]

In order to prevail on its LUTPA claim, Metcalfe must demonstrate that: (1) Multiquip engaged in an unfair or deceptive trade practice; (2) that Multiquip was a business competitor or other "person" to whom the statute grants a private right of action; and (3) it sustained an ascertainable loss as a result of the unfair or deceptive trade practice.[42]

Metcalfe asserts that someone from Multiquip phoned LDNR and informed them that Metcalfe had not shipped the generators which put Multiquip in the position to sell directly to LDNR. Metcalfe suggests that it was only because it had a copy of Metcalfe's purchase order from LDNR in hand that it was able to conveniently inform the State that it had the generators it needed. Metcalfe insists that Multiquip placed the call with the specific intent of undermining Metcalfe's contract, and that the information provided to Mr. Buatt induced him to order from Multiquip the

---

[38] Mixon v. Iberia Surgical, L.L.C., 956 So.2d 76 (La.App. 3 Cir. 4/18/07), writ denied 962 So.2d 438.

[39] Copeland v. Treasure Chest Casino, L.L.C., 822 So.2d 68 (La.App. 1 Cir. 6/21/02).

[40] Monroe Medical Clinic, Inc. v. Hospital Corp. Of America, 522 So.2d 1362, 1365 (La.App. 2 Cir. 1988).

[41] Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir. 1993).

[42] See e.g. Who Date Yat LLC v. Who Dat? Inc., 2011 WL 39043 (E.D.La.2011).

9

Case 3:09-cv-00941-JTT -JDK Document 69    09/27/11 Page 9 of 12

exact same generators he previously ordered from Metcalfe. Thus, Metcalfe argues that the trier of fact could reasonably infer that Multiquip placed the call to Buatt for the explicit purpose of undermining Metcalfe's relationship with LDNR in order for Multiquip to sell generators directly to the State itself. Metcalfe maintains that this is a violation of LUTPA.

Louisiana cases decided under LUTPA reveal the kind of behavior the statute aims to punish. In National Oil Service of Louisiana, Inc. v. Brown,[43] the court found a LUTPA violation when defendants exhibited a clear intent to decimate plaintiff's existing business which included such conduct as copying and destroying plaintiff's contracts and records involving its most important customers, converting a considerable amount of plaintiff's equipment to defendants' own use, neglecting the care of other equipment, setting up plaintiff's customers for pirating by neglecting to collect oil and then making misrepresentations about plaintiffs going out of business. The court determined that such conduct, which it deemed to be a course of calculated misconduct over a considerable period of time, was a scheme to virtually close down plaintiff's business while starting their own, using the same customers, the same key employees, much of plaintiff's equipment and some of the capital obtained through the sale of plaintiff's oil.

In Roustabouts, Inc. v. Hamer,[44] the court found that corporate officers, shareholders, directors, or employees of the plaintiff corporation, contributed substantial amounts of capital and time to a competitor company and furthermore, these officers, shareholders, directors or employees knew that plaintiff's employees were being used by the competitor without compensation to plaintiff. The court concluded that such conduct clearly exhibited an intent to decimate plaintiff's business

---

[43] 381 So.2d 1269 (La.App. 4th Cir. 1980).

[44] 447 So.2d 543 (La.App. 1 Cir. 1984).

Case 3:09-cv-00941-JTT -JDK   Document 69   09/27/11   Page 10 of 12

for their own gains, and that defendant engaged in basic business dishonesty of an unscrupulous and underhanded nature.

In Dufau v. Creole Engineering, Inc.,[45] the court determined that the solicitation and diversion of an employer's customers prior to termination was a LUTPA violation. In Dufau, the defendant had set up his own business in direct competition with plaintiff while still in the employ of the plaintiff. Furthermore, he had diverted plaintiff's business to his new business. In Turner v. Purina Mills, Inc.,[46] the court held that "an intent to eliminate the competition does not by itself violate LUTPA. Rather, the statute forbids businesses to destroy each other through improper means."[47]

Multiquip remarks that the undisputed facts set forth in paragraphs 7-9 reveal that Multiquip's call to LDNR only revealed a true statement, that Metcalfe's credit had not been approved and that the generators had not been loaded. Furthermore, it is undisputed that Metcalfe had originally informed LDNR that the generators had been loaded, when in fact this was not true.

LUTPA is aimed at remedying deceptive and unfair practices that occur within the context of a fiduciary or other "special relationship" between the parties; the absence of such a special relationship dooms a LUTPA claim.[48] Furthermore, "[o]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on

---

[45] 465 So.2d 752 (La.App. 5th Cir. 1985).

[46] 989 F.2d 1419, 1423 (5th Cir. 1993).

[47] Id.

[48] Shaw Industries, Inc. v. Brett, 884 F.Supp. 1054 (M.D. La. 1994).

Case 3:09-cv-00941-JTT -JDK Document 69  09/27/11  Page 11 of 12

LUTPA.[49] The court concludes that Metcalfe has failed to submit a genuine issue of material fact for trial as to whether or not Multiquip violated LUTPA. Making one phone call to LDNR to inform them that Metcalfe's credit had not been approved and that the generators had not been shipped, all of which is true, is not egregious behavior involving fraud, misrepresentation, deception or other unethical conduct. Accordingly, the motion for summary judgment will be granted and plaintiff's LUTPA claim will be dismissed.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted dismissing with prejudice plaintiff's claims of intentional interference of business relations and violations of LUTPA.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 27th day of September, 2011.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[49] <u>Cheramie Services, Inc. v. Shell Deepwater Production, Inc.</u>, 35 So.3d 1053, 1060 (La. 4/23/10).